IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

RICHMOND, VIRGINIA

No. 13-1939

CONSOLIDATION COAL COMPANY,

Petitioner,

v.

DONALD GILBERT,

Respondent,

and

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF LABOR,

Party-In-Interest.

_____

ON PETITION FOR REVIEW OF A DECISION AND ORDER
OF THE BENEFITS REVIEW BOARD
UNITED STATES DEPARTMENT OF LABOR

_____

OPENING BRIEF OF PETITIONER,
CONSOLIDATION COAL COMPANY
PUBLIC REDACTED VERSION

_____

William S. Mattingly
Jeffrey R. Soukup
Jackson Kelly PLLC
P. O. Box 619
Morgantown, WV  26507
(304) 284-4100
*Counsel for Consolidation Coal Co.*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

No. 13-1939          Caption:  Consolidation Coal Co. v. Donald Gilbert

Pursuant to FRAP 26.1 and Local Rule 26.1,

Consolidation Coal Co. who is Petitioner, makes the following disclosure:

1.      Is party/amicus a publicly held corporation or other publicly held entity?

           X    YES           _____ NO

2.      Does party/amicus have any parent corporations?

           X    YES           _____ NO

        Consolidation Coal Co. is a wholly owned subsidiary of CONSOL Energy,
        Inc., a publicly traded company on the New York Stock Exchange, ticketer
        symbol "CNX."

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held
        corporation or other publicly held entity?

           X    YES           _____ NO

        Consolidation Coal Co. is a wholly owned subsidiary of CONSOL Energy,
        Inc., a publicly traded company on the New York Stock Exchange, ticketer
        symbol "CNX."

4.      Is there any other publicly held corporation or other publicly held entity that
        has a direct financial interest in the outcome of the litigation (Local Rule
        26.1(b))?

           _____ YES           X    NO

5.      Is party a trade association? (amici curiae do not complete this question)

           _____ YES           X    NO

6.    Does this case arise out of a bankruptcy proceeding?

_____YES        __X___NO

/s/ Jeffrey R. Soukup                                September 18, 2013
*Counsel for Consolidation Coal Co.*

# TABLE OF CONTENTS

I.     STATEMENT OF SUBJECT MATTER JURISDICTION AND BASIS FOR APPELLATE REVIEW ........................................................1

II.    STATEMENT OF THE ISSUES ....................................................................2

        1.    In the initial claim, ALJ Lesniak found no clinical pneumoconiosis, opting to credit the opinions of Drs. Altmeyer, Fino, and Rosenberg as well-reasoned and persuasive.  In the subsequent claim, he finds these same medical opinions to be unpersuasive and clinical pneumoconiosis to be present.  Is this award of benefits, one that is both unexplained and unsupported by substantial evidence, irrational and contrary to applicable law? .................2

        2.    Is causation of pneumoconiosis under 20 C.F.R. § 718.203 (the 10-year presumption) relevant in a claim considered under 30 U.S.C. § 921(c)(4) (the 15-year presumption)? ..............................................................2

        3.    Does the ALJ's finding of disability due to pneumoconiosis remain unexplained? ......................................2

        4.    Did the ALJ inadequately weigh the evidence from this subsequent claim? ...............................................................2

III.   STATEMENT OF THE CASE ......................................................................3

IV.    STATEMENT OF FACTS ............................................................................7

V.     SUMMARY OF ARGUMENT....................................................................12

VI.    ARGUMENT..............................................................................................14

      A.    STANDARD OF REVIEW ...............................................................14

      B.    DISCUSSION OF ISSUES ...............................................................15

        1.    The ALJ's finding of clinical pneumoconiosis remains unexplained, unsupported by substantial evidence, and contrary to applicable law....................................15

iii

a.    The treating pulmonary expert, Dr. Robert B. Altmeyer. ...................................16

b.    The examining pulmonary expert, Dr. David M. Rosenberg...........................................23

c.    The examining pulmonary expert, Dr. Gregory J. Fino.........................................27

d.    The ALJ failed to explain why the opinions of Drs. Altmeyer, Fino, and Rosenberg on the existence of coal workers' pneumoconiosis are not persuasive. ..............................29

2.    Causation of pneumoconiosis under 20 C.F.R. § 718.203 (the 10-year presumption) is not relevant in a claim considered under 30 U.S.C. § 921(c)(4) (the 15-year presumption)....................................32

3.    The ALJ's finding of disability due to pneumoconiosis remains unexplained. ....................................34

4.    The ALJ inadequately weighed the evidence from this subsequent claim. ...............................................35

VII.    CONCLUSION....................................................................37

VIII.    REQUEST FOR ORAL ARGUMENT........................................38

IX.    ADDENDUM OF STATUTES, RULES, and REGULATIONS .................39

X.    CERTIFICATE OF COMPLIANCE WITH RULE 32(a)............................46

XI.    CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## Cases

*Barren Creek Coal Co. v. Witmer,*
    111 F.3d 352 (3d Cir. 1997) ...........................................................16

*Bogan v. Consolidation Coal Co.,*
    6 Black Lung Rep. 1-1000 (Ben. Rev. Bd. 1984) ........................... 22, 25, 28

*Consol. Edison Co. of N.Y. v. NLRB,*
    305 U.S. 197 (1938)...........................................................................14

*Dehue Coal Co. v. Ballard,*
    65 F.3d 1189 (4th Cir. 1995) ...........................................................14

*Gunderson v. U.S. Dep't of Labor,*
    601 F.3d 1013 (10th Cir. 2010) ............................................. 16, 29

*Harris v. Old Ben Coal Co.,*
    23 Black Lung Rep. 1-98 (Ben. Rev. Bd. 2006) (en banc) ............. 22, 25, 28

*Island Creek Coal Co. v. Compton,*
    211 F.3d 203 (4th Cir. 2000) ................................................. 14, 32

*Lane Hollow Coal Co. v. Director, OWCP,*
    137 F.3d 799 (4th Cir. 1998) ...........................................................31

*Marcum v. Director, OWCP,*
    11 Black Lung Rep. 1-23 (Ben. Rev. Bd. 1987) ............................. 22, 25, 28

*Milburn Colliery Co. v. Hicks,*
    138 F.3d 524 (4th Cir. 1998) .................................... 14, 19, 25, 31

*Mingo Logan Coal Co. v. Owens,*
    __ F.3d __, 2013 WL 3929081 (4th Cir. 2013)............................................35

*Peabody Coal Co. v. McCandless,*
    255 F.3d 465 (7th Cir. 2001) ...........................................................16

*Stalcup v. Peabody Coal Co.,*
    477 F.3d 482 (7th Cir. 2007) ...........................................................16

*Sterling Smokeless Coal Co. v. Akers,*
131 F.3d 438 (4th Cir. 1997) ........................................................................14

## Statutes

Administrative Procedure Act

5 U.S.C. § 557(c)(3)(A) ........................................................... 15, 16

Black Lung Benefits Act

30 U.S.C. § 921(c)(4) .................................................... *passim*

30 U.S.C. § 923(b) ................................................... 12, 21, 25, 34

30 U.S.C. § 932(a) ...........................................................1, 15

Longshore and Harbor Workers' Compensation Act

33 U.S.C. § 921(c) ...........................................................1

## Regulations

Part 718 – Standards for determining coal miners' total disability or death due to pneumoconiosis.

20 C.F.R. § 718.102................................................................22

20 C.F.R. § 718.102(b) ..........................................................20

20 C.F.R. § 718.201................................................... 19, 28

20 C.F.R. § 718.202................................................................12

20 C.F.R. § 718.202(a)(1)........................................................21

20 C.F.R. § 718.202(a)(4)........................................................5, 34

20 C.F.R. § 718.203................................................... *passim*

20 C.F.R. § 718.204........................................................................12

20 C.F.R. § 725.309..........................................................................4

Part 725 – Claims for benefits under Part C of Title IV of the Federal Mine Safety and Health Administration Act, as amended.

20 C.F.R. § 725.482(a) ...................................................................1

# I.  STATEMENT OF SUBJECT MATTER JURISDICTION AND BASIS FOR APPELLATE REVIEW

This matter involves an appeal from a final order of the United States Department of Labor ("DOL") Benefits Review Board ("Board"). This Court has jurisdiction over an appeal from a final order of the Board pursuant to Section 21(c) of the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 921(c), as incorporated by § 422(a) of the Black Lung Benefits Act ("BLBA"), 30 U.S.C. § 932(a).  The Board affirmed the award of federal black lung benefits to Donald Gilbert by Administrative Law Judge ("ALJ") Michael P. Lesniak.  Joint Appendix ("JA") 106.

The jurisdictional time limit for filing an appeal from a final order of the Board is sixty days.  *See* 33 U.S.C. § 921(c); 20 C.F.R. § 725.482(a).  The Board issued its final order affirming an award of benefits to Mr. Gilbert on May 30, 2013.  JA 106.  Consolidation Coal Company ("Consol") filed its appeal with this Court on July 26, 2013.  JA 114.  The injury alleged in this case, within the meaning of Section 21(c) of the LHWCA, occurred in West Virginia.  Therefore, this Court has jurisdiction to review the Board's decision.

## II.     STATEMENT OF THE ISSUES

1.     In the initial claim, ALJ Lesniak found no clinical pneumoconiosis, opting to credit the opinions of Drs. Altmeyer, Fino, and Rosenberg as well-reasoned and persuasive.  In the subsequent claim, he finds these same medical opinions to be unpersuasive and clinical pneumoconiosis to be present.  Is this award of benefits, one that is both unexplained and unsupported by substantial evidence, irrational and contrary to applicable law?

2.     Is causation of pneumoconiosis under 20 C.F.R. § 718.203 (the 10-year presumption) relevant in a claim considered under 30 U.S.C. § 921(c)(4) (the 15-year presumption)?

3.     Does the ALJ's finding of disability due to pneumoconiosis remain unexplained?

4.     Did the ALJ inadequately weigh the evidence from this subsequent claim?

### III.     STATEMENT OF THE CASE

This matter concerns a subsequent claim seeking lifetime disability benefits filed by Donald E. Gilbert, a retired coal miner, pursuant to the provisions of the Federal Coal Mine Health and Safety Act of 1969, as amended by the Black Lung Benefits Act of 1972, 30 U.S.C. § 901–45 ("BLBA"), and as implemented by the Code of Federal Regulations, Title 20, Parts 718 and 725. Mr. Gilbert seeks an award of lifetime disability benefits, claiming to be totally disabled due to coal mine dust-induced lung disease arising from his coal mine work. Mr. Gilbert last worked for Consolidation Coal Company ("Consol") in West Virginia in 1999.[1] Mr. Gilbert filed this, a subsequent claim, on November 21, 2007. JA 5.

A prior federal black lung claim had been filed in February 2002. JA 1. Administrative Law Judge ("ALJ") Michael P. Lesniak denied that claim on May 21, 2004. JA 9. In the prior decision denying benefits, ALJ Lesniak considered the evidence insufficient to establish the existence of pneumoconiosis or to find that pneumoconiosis arose from coal mine employment (i.e., that the pneumoconiosis constituted "coal workers' pneumoconiosis"). JA 25, 26. In reaching these conclusions, the ALJ analyzed medical opinions from Drs. Melvin

---

[1] Since Mr. Gilbert's last coal mine employment took place in West Virginia, the law of the United States Court of Appeals for the Fourth Circuit applies to this case. *See Kopp v. Director, OWCP*, 877 F.2d 307, 308 (4th Cir. 1989).

T. Saludes, Attilla Lenkey, Mohammed Ranavaya, Robert B. Altmeyer, Gregory J. Fino, and David M. Rosenberg. JA 23–25. The ALJ accorded the greatest weight to the opinions of Drs. Fino and Rosenberg. JA 25. Mr. Gilbert appealed the denial of benefits to the Benefits Review Board ("Board"), which affirmed on May 31, 2005. JA 29. Mr. Gilbert abandoned the claim.

Over two years later, Mr. Gilbert filed the present claim (a subsequent claim under the BLBA, 20 C.F.R. § 725.309). JA 5. This subsequent claim was to be considered by the agency fact-finder who had considered, and denied, the original claim. Despite considering medical opinions from the same physicians credited in the original claim, on the second occasion the same ALJ reversed his prior findings, and on January 7, 2010, awarded benefits. JA 62. The ALJ found the newly submitted chest x-ray interpretations positive for pneumoconiosis. JA 70-71. By showing the existence of pneumoconiosis, Mr. Gilbert established the necessary change in a condition of entitlement, needed for the subsequent claim to be considered on the merits. JA 71. Considering the merits, the ALJ found the physicians' opinions and x-ray evidence established the existence of clinical coal workers' pneumoconiosis (but not legal coal workers' pneumoconiosis), and that total disability was caused by or contributed to by coal workers' pneumoconiosis. JA 71–74.

Consol appealed to the Board. During the pendency of the appeal, the Patient Protection and Affordable Care Act ("ACA") was enacted. The ACA amended the BLBA, 30 U.S.C. § 921(c)(4), to reinstitute the 15-year presumption, under which a miner with at least fifteen years of coal mine employment and a totally disabling respiratory or pulmonary impairment is presumed disabled due to coal workers' pneumoconiosis.

On February 18, 2011, the Board affirmed the benefits award in part and vacated in part. JA 76. The Board vacated the finding of pneumoconiosis under 20 C.F.R. § 718.202(a)(4), the dependent findings that the newly submitted x-ray and medical opinion evidence together established clinical coal workers' pneumoconiosis, and the finding of a change in an applicable condition of entitlement. JA 81–82. While the ALJ summarized the physicians' opinions, the Board held the decision was deficient, as the ALJ failed to analyze the opinions' documentation and reasoning or to assess the varying credentials of the opinions' authors. JA 82–83. The Board directed the ALJ on remand to analyze the conflicting medical opinion evidence and to address the opinions' comparative quality. JA 83.

On remand, the ALJ again awarded benefits, in an April 27, 2012 decision. JA 86. The ALJ reconsidered the medical opinion evidence and again found that it and the x-ray evidence were sufficient to establish clinical coal workers'

5

pneumoconiosis.  JA 96–97, 99.  The ALJ found the opinions of Drs. Rosenberg,

Fino, and Altmeyer insufficient to rebut the 15-year presumption of total disability

due to pneumoconiosis, either by disproving the existence of coal workers'

pneumoconiosis or by proving total disability did not arise out of or in connection

with coal mine employment.  JA 99–103.

Aggrieved, Consol again appealed to the Board, which affirmed the benefits

award on May 30, 2013.  JA 106.  The Board held the ALJ properly discounted the

opinions of Drs. Altmeyer, Fino, and Rosenberg, and properly found Consol could

not rebut the 15-year presumption of total disability due to pneumoconiosis.

JA 109–11.

Consol filed its Petition for Review with this Court on July 26, 2013,

JA 114, and now asks the Court to review the merits of the award of benefits.

# IV.    STATEMENT OF FACTS

Donald Gilbert worked as a coal miner for thirty years, having last worked in 1999 for Consol.  JA 11.  In addition to coal mine dust exposure Mr. Gilbert had significant exposure to asbestos and was a long-time cigarette smoker.  JA 10–11, 64, 66.  He consistently reported a smoking history of one to two packages of cigarettes per day, for over twenty to twenty-five years.  JA 11, 13, 64, 66, 67, 68.

The medical evidence submitted for the subsequent claim consisted of chest x-rays, treatment records, and medical opinions.  Treatment records from 1999 to 2011 from Dr. Robert B. Altmeyer revealed Mr. Gilbert was significantly exposed to asbestos prior to 1969, when he worked for a previous employer, using an air gun to blow asbestos-containing compound into walls and ceilings.  JA 17–19.  Dr. Altmeyer diagnosed a pneumoconiosis,[2] but concluded the disease was due not to coal dust but to asbestos exposure.  JA 66.  Dr. Altmeyer noted Mr. Gilbert's diffusing capacity improved dramatically without a change of treatment in 2002.  JA 19, 66.  Dr. Altmeyer also observed Mr. Gilbert was not having any particular breathing problems.  JA 19.

Dr. Melvin T. Saludes evaluated Mr. Gilbert in 2009 at the request of Mr. Gilbert's counsel.  JA 13–14.  Dr. Saludes diagnosed Mr. Gilbert with

---

[2]  Pneumoconiosis is a dust-induced chronic lung disease, encompassing dust exposures other than only dust arising in coal mining.

7

pneumoconiosis, a mild restrictive defect without significant obstruction, and asbestosis. JA 14, 66. Dr. Saludes reported the restrictive disease could be multifactorial, caused by asbestosis, obesity, or coal workers' pneumoconiosis. JA 66. He did not assess pulmonary disability. JA 66.

Dr. John T. Schaaf also examined Mr. Gilbert in 2007 at the request of Mr. Gilbert's counsel. JA 67. Dr. Schaaf understood Mr. Gilbert worked thirty years in underground coal mines and smoked cigarettes for twenty years at less than one package per day. *See* JA 67. Dr. Schaaf diagnosed both clinical and legal pneumoconiosis. JA 67. Dr. Schaaf based his determination of coal workers' pneumoconiosis on a chest x-ray he reviewed. JA 67. While reluctant to attribute the x-ray findings to asbestos even though Mr. Gilbert described work-related asbestos exposure, Dr. Schaaf could not unequivocally state whether asbestos or coal dust definitely caused the pneumoconiosis he felt was on the x-ray. JA 67.

██████████████████████████████████████████████

████████████████ JA 375, 389–91, 393-94.

Dr. David M. Rosenberg evaluated Mr. Gilbert in 2008 for Consol. JA 16-17, 67–68. ██████████████████████████████████

██████████████████████ JA 168. Dr. Rosenberg found inadequate evidence to diagnose either legal or clinical coal workers' pneumoconiosis. JA 16–17, 67. Dr. Rosenberg found no evidence on the chest x-ray of the linear interstitial lung

disease that had been noted by others to previously be present.  JA 67.  The chest

x-ray showed both cardiomegaly (enlarged heart) and vascular congestion.  JA 67.

The restrictive impairment was a result of obesity as Mr. Gilbert had normal

diffusing capacity when corrected for lung volumes.  JA 67–68.  Although other

physicians diagnosed asbestos-related pneumoconiosis, Dr. Rosenberg did not find

asbestos-related pneumoconiosis or impairment arising out of asbestosis.  JA 68.



JA 67–68, 330.

JA 530–31.

JA 68, 330.

    Dr. Gregory J. Fino also evaluated Mr. Gilbert in 2008 for Consol.  JA 68.

Dr. Fino had a prior opportunity to examine Mr. Gilbert in 2002 in connection with

Mr. Gilbert's original claim.  JA 15–16.

JA 455–57.

JA 68,

461.  Dr. Fino diagnosed neither clinical nor legal pneumoconiosis.  JA 68.  Chest

x-rays showed significant cardiomegaly and vascular markings consistent with

either left ventricular failure or an interstitial pulmonary condition.  JA 68.  The

x-ray was not diagnostic of coal workers' pneumoconiosis, as it showed irregular

opacities and upper-lobe sparing.  JA 68.  The irregular opacities identified on

chest x-ray were caused neither by a coal mine dust-related condition, nor by

asbestosis.  JA 68.  ██████████████████████████████████████

███████████████████████  *See* JA 462.  The hypoxemia was not

indicative of coal workers' pneumoconiosis, as it has not worsened since 1982.

JA 68.  The disabling hypoxemia, in conjunction with a normal diffusing capacity,

revealed that the blood gas abnormalities were due to obesity or heart failure, but

not to coal workers' pneumoconiosis.  JA 68.

████████████████████████████████████████████

████████████████████████████ ███████████████

█████████████████████████████████████

██████████████████████████████████████

██████████████████████████████

JA 495-96.  ████████████████████████████████

███████████████████████████████████████  JA 496−97.

Dr. Paul Knight, board-certified in internal medicine but not pulmonary

medicine, evaluated Mr. Gilbert for the agency.  JA 92−93.  ████████████████

████████████████████████████████████████

JA 316–17.  While unaware of any asbestos exposure, he agreed asbestos could

cause Mr. Gilbert's chest x-ray abnormalities.  JA 93.  ███████████████████

██████████████████████████████████████████ JA 294.

He found mild restriction and moderate hypoxemia.  JA 92.  ████████████████

████████████████████████████████████████████████

███████████████████████████ JA 294.

## V.     SUMMARY OF ARGUMENT

The benefits award in Mr. Gilbert's subsequent claim is premised on an incorrect application of the 15-year rebuttable presumption of total disability due to coal workers' pneumoconiosis.  While the 15-year presumption was properly invoked based on Mr. Gilbert's employment and pulmonary disability, the ALJ's logic denied Consol one of the two rebuttal methods to rebut the presumption by proving any alleged pneumoconiosis did not arise out of coal mine employment. The ALJ rejected the physicians' opinions as to disability causation because he found the presumption of clinical coal workers' pneumoconiosis was not rebutted. The ALJ irrationally rejected the physicians' explanations for why any pneumoconiosis may have been the result of exposure to another occupational dust (asbestosis) and for why any disabilities were not related to coal dust exposure.  In so doing, the ALJ deprived the operator of the ability to have all relevant evidence considered before an award of benefits was entered.  *See* 30 U.S.C. § 923(b) (all relevant evidence must be considered in making black lung benefits determinations).

The ALJ errs in finding the existence of pneumoconiosis, that pneumoconiosis arose out of coal mine employment, and that any disabling pulmonary disease was caused by coal dust exposure as per 20 C.F.R. § 718.202-04 and 30 U.S.C. § 921(c)(4).  The ALJ fails to explain why certain

opinions are credited and fails to reconcile the credibility determinations in his

decision denying Mr. Gilbert's original claim with the contrary credibility

determinations in his decision awarding Mr. Gilbert's subsequent claim.  The

agency decision awarding benefits is therefore irrational, unsupported by

substantial evidence, and contrary to law.  The Court should vacate and remand for

further proceedings consistent with the law.[3]

---

[3]  As ALJ Lesniak retired from the Office of Administrative Law Judges earlier
this summer, it is unlikely that he will consider Mr. Gilbert's claim again on
remand.

# VI.     ARGUMENT

## A.     STANDARD OF REVIEW

In reviewing claims for benefits under the BLBA, this Court determines whether substantial evidence supports the findings of fact and conclusions of law issued by the ALJ. *Dehue Coal Co. v. Ballard*, 65 F.3d 1189, 1193 (4th Cir. 1995). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938); *Milburn Colliery Co. v. Hicks*, 138 F.3d 524, 529 (4th Cir. 1998). In determining whether substantial evidence supports the ALJ's factual determination, the Court should address whether all relevant evidence has been analyzed and whether the ALJ has sufficiently explained the rationale used in crediting certain evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439 (4th Cir. 1997).

The ALJ's and Board's conclusions of law are reviewed *de novo* to determine if they are rational and consistent with the applicable law. *See Ballard*, 65 F.3d at 1193; *see also Island Creek Coal Co. v. Compton*, 211 F.3d 203, 207–08 (4th Cir. 2000).

**B.    DISCUSSION OF ISSUES**

**1.    The ALJ's finding of clinical pneumoconiosis remains unexplained, unsupported by substantial evidence, and contrary to applicable law.**

The ALJ described the new and relevant medical evidence containing various x-ray interpretations, pulmonary function studies, and arterial blood gases in his 2010 decision.  JA 66−69.  The Board agreed with Consol that the decision was deficient and not based on substantial evidence, as the ALJ had failed to explain why he credited some evidence and discredited other evidence as to the existence of clinical pneumoconiosis.  JA 81−83.  On remand, the ALJ essentially repeated the same error: he undertook a lengthy multipage summary of the relevant medical evidence, but again failed to meaningfully resolve the conflicting evidence as he is charged to do under the Administrative Procedure Act ("APA").  *See* 5 U.S.C. § 557(c)(3)(A).[4]  He also again failed to address the physicians' expert credentials and failed to resolve the conflicting evidence.

The errors in the ALJ's consideration of the evidence of clinical pneumoconiosis invalidate the dependent findings of whether pneumoconiosis or

---

[4]  The provisions of the APA are applicable to the BLBA through the Longshore and Harbor Workers' Compensation Act.  *See* 33 U.S.C. § 919(d), as incorporated by 30 U.S.C. § 932(a); *Hillibush v. Dep't of Labor*, 853 F.2d 197, 202 n.6 (3d Cir. 1988); *North Am. Coal Co. v. Miller*, 870 F.2d 948, 951 (3d Cir. 1989); *Peabody Coal Co. v. Hale*, 771 F.2d 246, 248 (7th Cir. 1985); 20 C.F.R. § 725.477(b).

disability is rebutted under the 15-year presumption.  As such, the decision should be vacated for additional fact-finding as the BLBA and APA require.  The ALJ's discussion is insufficient under the demands of the APA, which requires an agency's adjudicative decision to be accompanied by a clear and satisfactory explanation of the basis on which it rests.  5 U.S.C. § 557(c)(3)(A); *Gunderson v. U.S. Dep't of Labor*, 601 F.3d 1013 (10th Cir. 2010); *Barren Creek Coal Co. v. Witmer*, 111 F.3d 352, 356 (3d Cir. 1997).  In a case where medical or scientific evidence is presented, the scientific dispute must be resolved on scientific grounds, requiring the ALJ to articulate a reason and provide support for favoring one opinion over another.  *Stalcup v. Peabody Coal Co.*, 477 F.3d 482, 484 (7th Cir. 2007); *Peabody Coal Co. v. McCandless*, 255 F.3d 465, 469 (7th Cir. 2001).

The ALJ noted opinions of Drs. Altmeyer, Rosenberg, and Fino were relevant to a determination of pneumoconiosis.  While the ALJ supplies reasons for his findings on remand, the rationale used is irrational, not supported by substantial evidence of record, or contrary to law.

### a. The treating pulmonary expert, Dr. Robert B. Altmeyer.

The ALJ described the treatment records from Dr. Robert B. Altmeyer, Mr. Gilbert's treating pulmonary physician.  JA 17−19, 93−94.  Dr. Altmeyer noted Mr. Gilbert was exposed to asbestos when he worked for a company blowing asbestos-containing compound into walls and ceilings with an air gun.  JA 18.

16

Dr. Altmeyer found pneumoconiosis, by definition a chronic dust disease of the lung, but a diagnosis of pneumoconiosis is *not necessarily* due to coal dust exposure.  JA 94, 97.  Dr. Altmeyer attributed pneumoconiosis to exposure to asbestos dust.  JA 97.  Dr. Altmeyer noted that diffusing capacity improved dramatically without a change of treatment in 2002, and that Mr. Gilbert was not having any particular breathing problems.  JA 19, 66.  The ALJ also noted additional treatment records and testimony from Dr. Altmeyer, which had been submitted after the Board's 2011 decision.  JA 93−94.  Dr. Altmeyer attributed Mr. Gilbert's restrictive impairment to obesity and interstitial lung disease, explaining that coal mine work had not caused the impairment.  JA 93.

In discussing the weight to be accorded Dr. Altmeyer's opinion, the ALJ inaccurately and inappropriately described Dr. Altmeyer's deposition testimony and compounded that error by relying on that inaccuracy to award benefits.  The ALJ indicated in the decision that Dr. Altmeyer testified he had originally examined Mr. Gilbert for hypoxemia and asbestosis, and that he did not know how long Mr. Gilbert was exposed to asbestos.  JA 93.

17



JA 571.  Also, Dr. Altmeyer explained in treatment records that Mr. Gilbert

inhaled a significant amount of asbestos prior to 1969.  JA 18.

The ALJ discussed Dr. Altmeyer's opinion and ultimately found it

problematic that the doctor treated Mr. Gilbert for asbestosis yet was unable to

state how long or when the exposure occurred.  JA 101.  Given Dr. Altmeyer's

testimony and treatment note comments, the ALJ's finding is not supported by

substantial evidence in the agency record.  Although Dr. Altmeyer was admittedly

unsure how long Mr. Gilbert had worked with asbestos (and somewhat

refreshingly declined from speculating), he knew Mr. Gilbert had inhaled a

significant amount of asbestos prior to 1969 and ultimately concluded it caused

disease.  This same fact-finder previously noted that the length of employment

with exposure to asbestos was immaterial, as the conditions were sufficient to

support Dr. Altmeyer's diagnosis of asbestosis.  In the prior decision, the ALJ

resolved:

> However, I find that Dr. Altmeyer's opinion that Claimant had
> asbestosis does not fall within the meaning of pneumoconiosis as
> defined by the Act.  As noted above, "clinical pneumoconiosis"
> consists of those diseases recognized by the medical community as

pneumoconiosis, i.e., the conditions characterized by permanent deposition of substantial amounts of particulate matter in the lungs and the fibrotic reaction of the lung tissue to that deposition caused by dust exposure in coal mine employment. "Legal pneumoconiosis" includes any chronic lung disease or impairment and its sequelae arising out of coal mine employment. A disease "arising out of coal mine employment" includes any chronic pulmonary disease or - 16 - respiratory or pulmonary impairment significantly related to, or substantially aggravated by, dust exposure in coal mine employment. 20 C.F.R. § 718.201.

At his initial meeting with Claimant on October 14, 1999, Dr. Altmeyer noted that prior to 1969, Claimant worked for a company blowing an asbestos-containing compound onto walls and ceilings with an air gun. Claimant reportedly inhaled a significant amount of asbestos prior to his working in the mines. There is no mention of Claimant being exposed to asbestos while working in the coal mine. Throughout Dr. Altmeyer's notes, there is no mention of a diagnosis of pneumoconiosis. Moreover, Dr. Altmeyer did not comment whether Claimant's asbestosis was aggravated by the inhalation of coal mine dust. There is no evidence in Dr. Altmeyer's notes that Claimant's asbestosis arose out his coal mine employment. For these reasons, I find that Dr. Altmeyer's diagnosis of asbestosis is insufficient to establish pneumoconiosis as defined in the Act.

JA 23–24.

The length of exposure was not considered relevant, as Dr. Altmeyer explained the significant exposure was sufficient to have caused asbestosis. These two contrary resolutions of the same evidence by the same fact-finder are unexplained and per se irrational. Such unexplained adverse determinations do not constitute rational decision making. In *Hicks*, this Court reviewed an ALJ's decision to inexplicably discredit the medical opinion of Dr. Zaldivar where the same ALJ had credited the same medical opinion in a prior decision. *See Hicks*,

138 F.3d 524.  The Fourth Circuit reversed and remanded, in part, because the ALJ failed to provide reasons justifying his contradictory credibility determinations. *See id.* at 533–35.  The same course merits vacating the ALJ's contradictory determination in this case.

The ALJ also discredited Dr. Altmeyer because the doctor predicated his opinion that Mr. Gilbert's lung changes did not arise from coal dust exposure on the lung-base location of the changes.  JA 101.  The ALJ found this rationale contrary to the regulations, which address only the size of lung profusions and not their shape or location.[5]  JA 101.  He relied on 20 C.F.R. § 718.102(b) as a rule to support his proposition.  JA 101.

First, this finding in the subsequent claim is inconsistent with the same ALJ's finding in his decision denying benefits in the original claim.  *Compare* JA 23–24 *with* JA 101.  The ALJ errs in confusing the x-ray findings with the consideration of the medical opinion evidence.  Indeed, the ALJ accurately describes Dr. Altmeyer's opinion in the original claim's decision and correctly concludes Dr. Altmeyer fails to diagnose clinical coal workers' pneumoconiosis. JA 23–24.  The contrary finding in the subsequent claim's decision is not based on

---

[5]  The ILO form used addresses shape (rounded opacities as P, Q, or R, and irregular opacities as S, T, or U) and location (upper, middle, or lower right or left lungs), not just profusion (0/0 to 3/+).

substantial evidence, as it fails to heed the BLBA's command that all relevant evidence be considered.  30 U.S.C. § 923(b).

Second, the ALJ's consideration of the medical evidence crosses the line between interpreting the legal criteria for pneumoconiosis at 20 C.F.R. § 718.202(a)(1) (which is the ALJ's province) and determining the medical significance of the shape and location of chest x-ray abnormalities (which is a medical expert's province).  Where the 15-year presumption of 30 U.S.C. § 921(c)(4) applies, a benefits claimant is presumed disabled due to coal workers' pneumoconiosis.  The disease-causation 10-year presumption of 20 C.F.R. § 718.203 is unnecessary and redundant.  The ALJ afforded Mr. Gilbert an improper "double presumption" under the guise of disease causation rather than determining whether a preponderance of the evidence rebuts the 15-year presumption of total disability due to coal workers' pneumoconiosis.  The fact-finder erred in claiming that medical opinions fail to rebut the 15-year presumption where those opinions diagnose pneumoconiosis but unequivocally opine that the pneumoconiosis does not arise out of coal mine dust exposure.  Coal dust-induced pneumoconiosis is the only type of pneumoconiosis compensable under the BLBA.

As was credited in the decision denying the original claim, Dr. Altmeyer explained he interpreted the x-ray as showing pneumoconiosis profusion 1/0, size

21

s/t opacities in both the mid and lower lung zones, with bilateral pleural thickening. JA 18.  He concluded that these x-ray findings were those of asbestosis, a form of pneumoconiosis unrelated to coal dust exposure.  JA 18.

In now rejecting Dr. Altmeyer's reasoning as inconsistent with the regulations, the ALJ as a lay fact-finder suggests that the regulations trump Dr. Altmeyer's medical conclusion that lung-base predominant opacities are consistent with asbestosis.  There are two problems with such an analysis. Initially, the regulation is silent as to causation of the abnormalities described as sufficient to support a finding of pneumoconiosis.  The rule at 20 C.F.R. § 718.102, which defines what x-ray changes are needed to support a finding of pneumoconiosis, does not mandate that all changes constitute coal workers' pneumoconiosis.  Instead, the regulation explains x-rays of less than 1/0 profusion are not sufficient to establish pneumoconiosis, and incorporates other quality standards.

Second, the interpretation of objective data is a medical determination and an ALJ may not substitute his lay opinion for that of an expert physician.  *Marcum v. Director, OWCP*, 11 Black Lung Rep. 1-23 (Ben. Rev. Bd. 1987); *Harris v. Old Ben Coal Co.*, 23 Black Lung Rep. 1-98 (Ben. Rev. Bd. 2006) (en banc); *Bogan v. Consolidation Coal Co.*, 6 Black Lung Rep. 1-1000 (Ben. Rev. Bd. 1984).  On remand, the fact-finder should be instructed not to conflate the 15-year

presumption of 30 U.S.C. § 921(c)(4) with the 10-year presumption of 20 C.F.R. § 718.203. Once a benefits claimant is presumed totally disabled due to coal workers' pneumoconiosis, the fact-finder must consider the evidence *absent any presumptions* to determine if the existence of pneumoconiosis or causation of disability is rebutted.

The reasons in the award for giving Dr. Altmeyer's opinion less deference are irrational, unsupported by substantial evidence, and contrary to law, as the lay fact-finder re-interpreted the medical significance of the x-ray changes found by the medical expert, and based his opinion on an incomplete and selective interpretation of the record. As Dr. Altmeyer's opinion can be given determinative weight, the Court should vacate and remand for further consideration.

> **b.    The examining pulmonary expert, Dr. David M. Rosenberg.**

Dr. David M. Rosenberg evaluated Mr. Gilbert in August 2008 for the subsequent claim. JA 90. ███████████████████████████ ███████████████████████████ JA 168. He diagnosed neither legal nor clinical pneumoconiosis. *See* JA 90–91. The more recent chest x-ray did not show changes of coal workers' pneumoconiosis, but showed both cardiomegaly and vascular congestion. JA 90. The restrictive impairment was the result of obesity inasmuch as Mr. Gilbert had normal diffusing capacity when corrected for lung volumes. JA 67–68. Although other physicians diagnosed asbestos-related

pneumoconiosis, Dr. Rosenberg did not find asbestos-related pneumoconiosis or impairment arising out of asbestos (asbestosis). JA 68.

In the 2004 decision denying benefits, the ALJ accorded Dr. Rosenberg's consultative opinion great weight. JA 25. Dr. Rosenberg initially opined that Mr. Gilbert did not have coal workers' pneumoconiosis, but instead had idiopathic pulmonary fibrosis or asbestosis. JA 17. Based on his review of additional evidence, Dr. Rosenberg incorporated the changes and revised his initial assessment to conclude Mr. Gilbert's major problems were massive obesity, hypoventilation, and obesity-induced ventilation-perfusion mismatch. JA 17. At that time, the ALJ deemed this opinion well-reasoned and consistent with the objective diagnostic testing of record. JA 25.

On reconsidering the medical opinion evidence in the subsequent claim, the ALJ concluded Dr. Rosenberg's opinion—that Mr. Gilbert does not have clinical coal workers' pneumoconiosis—is partially based on the x-ray finding of linear opacities, which are inconsistent with coal workers' pneumoconiosis. JA 96. To the extent the ALJ's observation reflects x-ray readings newly submitted for the subsequent claim, the ALJ gave Dr. Rosenberg's opinion little weight because the regulations do not require rounded or micronodular opacities to diagnose coal workers' pneumoconiosis. JA 96. The ALJ's analysis of Dr. Rosenberg's opinion is irrational, as it is inconsistent with that from the same ALJ's analysis in his

24

decision denying the original claim absent some other explanation.  This
about-face is irrational.  *See Hicks*, 138 F.3d 533–35.

The ALJ's rationale is also flawed in its own right.  The existence of a form
of pneumoconiosis is not the same as the existence of coal workers'
pneumoconiosis. The ALJ conflates the 15-year and 10-year presumptions and
compounds this legal error by personally assigning meaning to the medical data.
This a lay fact-finder cannot do.  *See Marcum*, 11 Black Lung Rep. 1-23; *Harris*,
23 Black Lung Rep. 1-98; *Bogan*, 6 Black Lung Rep. 1-1000.  The ALJ did not
meaningfully consider all relevant evidence, contrary to the requirements of the
BLBA.  *See* 30 U.S.C. § 923(b).



(JA 541),

*See* JA 542–43.

JA 542–43.  Thus, the ALJ's reason for discrediting
Dr. Rosenberg's opinion is inconsistent with the doctor's testimony and is
unsupported by substantial evidence.



Thus, the ALJ's analysis of Dr. Rosenberg's decision in the decision granting the subsequent claim fails to consider the actual basis by which Dr. Rosenberg excluded pneumoconiosis as a cause of the impairment. Dr. Rosenberg's conclusion was not predicated on a finding of linear opacities but on the accumulation of all the information he considered, as evidenced by his narrative report and deposition testimony. As the ALJ failed to consider all the

relevant evidence of record, the benefits award should be vacated and remanded for reconsideration.

### c.     The examining pulmonary expert, Dr. Gregory J. Fino.

Dr. Gregory J. Fino evaluated Mr. Gilbert on May 30, 2002 and again on November 4, 2008.  JA 91. 

JA 462.  Chest x-rays showed significant cardiomegaly and vascular markings consistent with either left ventricular heart failure or an interstitial pulmonary condition.  JA 91.  Dr. Fino found the irregular chest x-ray opacities were caused by neither a coal mine dust-related condition nor asbestosis.  *See* JA 91–92.

JA 489.

JA 493–96.

In the 2012 decision awarding benefits on remand in the subsequent claim, the ALJ gave Dr. Fino's opinion little deference because Dr. Fino did not diagnose coal workers' pneumoconiosis "in spite of" the doctor's positive 1/1 profusion x-ray reading.  JA 96–97.  The ALJ also gave little weight to Dr. Fino's opinion as the regulations do not require rounded opacities to diagnose clinical pneumoconiosis.  JA 96–97.  As was the case with Dr. Altmeyer and

Dr. Rosenberg, the ALJ crossed the line between fact-finder and medical expert, inappropriately undermining the expert physician's ability to determine disease causation by claiming the regulations do not differentiate between the causation of disease. *See Marcum*, 11 Black Lung Rep. 1-23; *Harris*, 23 Black Lung Rep. 1-98; *Bogan*, 6 Black Lung Rep. 1-1000.

The ALJ's reading of the regulations is belied by the definition of pneumoconiosis contained in 20 C.F.R. § 718.201. Pneumoconiosis is defined as a chronic dust disease of the lung arising out of coal mine employment. *See id.* The mere fact that an x-ray shows radiographic changes that could be consistent with pneumoconiosis cannot overcome a physician's contrary statement that the changes seen are not due to coal dust exposure. If the ALJ's interpretation were correct, all positive x-ray would be irrebuttably "deemed" pneumoconiosis even if the physician explained the changes were due to asbestosis, lung cancer, or tuberculosis. Drs. Altmeyer, Rosenberg, and Fino all explain the radiographic changes are not attributable to coal dust exposure. That being the case, the ALJ erred in finding that these doctors' opinions, which are also premised on more than just observed x-ray changes, are entitled to little weight.

### d.  The ALJ failed to explain why the opinions of Drs. Altmeyer, Fino, and Rosenberg on the existence of coal workers' pneumoconiosis are not persuasive.

The award is inadequate as it fails to explain why the opinions of Drs. Altmeyer, Rosenberg, and Fino—each of whom carefully discussed the substantial body of scientific evidence and integrated that evidence and Mr. Gilbert's medical record into their conclusion that coal mine dust did not contribute to any pulmonary disease or disability—are not, this time, persuasive.

While an ALJ's task is not to resolve general scientific controversies but to determine the facts of the case at hand and apply the law accordingly, the ALJ must accomplish this task by careful consideration of many factors, including the respective physicians' qualifications, their explanation of their medical opinions, the documentation underlying their medical judgments, and the sophistication and bases of their diagnoses.  *See Gunderson*, 601 F.3d at 1024.

In awarding the subsequent claim, the ALJ contradicts his findings from the decision denying the original claim, where the same ALJ considered opinions from Drs. Fino and Rosenberg credible and persuasive.  In his 2004 decision, the ALJ credited Dr. Fino's opinion, as the opinion was well-reasoned and well-documented.  JA 25.  He noted Dr. Fino explained that: none of Mr. Gilbert's medications were for treating lung disorder; hypoxemia was due to obesity; sleep apnea could contribute to hypoxemia; Mr. Gilbert's symptoms could be explained

29

by obesity; Mr. Gilbert was seventy pounds overweight and 30% over his ideal body weight; haziness in the lower portions of the lungs was not due to pneumoconiosis; there was a normal diffusing capacity and slightly reduced lung volumes consistent with obesity; and weight gain was consistent with an extrinsic problem rather than an intrinsic lung disease. JA 15–16, 25. The ALJ also noted Dr. Fino's more recent opinion, where the doctor found evidence of neither clinical nor legal coal workers' pneumoconiosis. JA 91. X-ray abnormalities showed cardiomegaly and vascular markings consistent with left ventricular failure or an interstitial pulmonary condition, but not a coal-mine-dust-related condition. JA 91–92. ████████████████████████████████████████ ████████████████████████████████ JA 489. The irregular opacities identified on chest x-ray were caused by neither a coal mine dust-related condition, nor by asbestosis. JA 91–92.

Similarly, the ALJ in his 2004 decision also found Dr. Rosenberg's opinion well-reasoned and consistent with the objective diagnostic testing. JA 25. As support, the ALJ noted Dr. Rosenberg stressed that: pulmonary function studies showed a degree of mild restriction with no obstruction; an increase in the body mass index was responsible for the restrictive abnormality; obesity could cause hypoventilation; Mr. Gilbert had heart failure; there was no x-ray evidence of coal workers' pneumoconiosis; and obesity hyperventilation syndrome explained the

respiratory condition. JA 16–17, 25. While Dr. Rosenberg's testimony was somewhat different from his written opinion, the testimony and discrepancy therein was explained by the new information Dr. Rosenberg considered prior to his deposition. *See* JA 17. In his decision awarding the subsequent claim, the ALJ noted Dr. Rosenberg had explained that: Mr. Gilbert had an extrinsic restriction as a result of obesity; Mr. Gilbert had normal diffusion capacity when corrected for lung volumes; any impairment was consistent with obesity or coronary artery disease; and Mr. Gilbert was not disabled from pulmonary disease or coal dust exposure. JA 67–68.

In his 2010 decision awarding benefits in the subsequent claim, and again in his 2012 decision awarding benefits in that claim on remand, the ALJ failed to explain why he no longer considered Drs. Fino and Rosenberg's explanations persuasive. Such change in credibility determinations must be explained or should not be given deference. *See Hicks*, 138 F.3d 533–35. The ALJ did not explain why he found "the x-ray evidence and majority of the physician opinions" establishes the existence of clinical pneumoconiosis. The ALJ's conclusory pronouncement is inadequate to resolve the conflicting evidence. At the bottom line, the parties reviewing the decision are left to guess why the ALJ ruled as he did. As such, the decision is deficient. *See Lane Hollow Coal Co. v. Director, OWCP*, 137 F.3d 799, 803 (4th Cir. 1998).

The ALJ's conclusion that Dr. Schaaf's and Dr. Altmeyer's reports support finding clinical pneumoconiosis by a preponderance of the evidence is unexplained and inadequate decision-making. Dr. Schaaf's opinion ultimately may not be credible as he diagnoses both clinical and legal pneumoconiosis, but the ALJ fails to find legal pneumoconiosis convincingly established. The ALJ must consider the impact of such inconsistencies when analyzing opinion evidence. *Island Creek Coal Co. v. Compton*, 211 F.3d 203 (4th Cir. 2000). The ALJ also notes Dr. Schaaf ruled out asbestosis despite relying on an incorrect history of asbestos exposure. 2010 ALJ D&O at 11. The ALJ incorrectly required Consol's physicians to rule out why interstitial lung disease such as asbestosis or coronary artery disease do not explain Mr. Gilbert's condition, when he should have required Mr. Gilbert to prove pneumoconiosis caused his condition.

### 2. Causation of pneumoconiosis under 20 C.F.R. § 718.203 (the 10-year presumption) is not relevant in a claim considered under 30 U.S.C. § 921(c)(4) (the 15-year presumption).

While the ALJ correctly noted there is a regulatory presumption that a miner's pneumoconiosis arose out of coal mine employment where the miner was employed at least ten years in the coal mines (20 C.F.R. § 718.203), the ALJ incorrectly conflates this with the 15-year presumption of 30 U.S.C. § 921(c)(4). The ALJ's finding that Mr. Gilbert's alleged pneumoconiosis arose out of coal mine employment because there is a rebuttable presumption the disease arose out

32

of coal mine employment is legally inadequate.  The ALJ failed to sufficiently explain why he made this decision, thus failing to abide by the dictates of the BLBA or the APA.

In this case, Drs. Fino, Altmeyer, and Rosenberg explained why any radiographic evidence suggesting pneumoconiosis indicated that disease did not arise from coal dust exposure.  The 10-year presumption of 20 C.F.R. § 718.203 is not relevant when analyzing the evidence relied on to rebut the 15-year presumption of 30 U.S.C. § 921(c)(4).  Rather than considering whether clinical coal workers' pneumoconiosis is present, the ALJ effectively granted Mr. Gilbert a "double presumption," finding Consol must jump through yet another hoop to rebut the presumption of total disability due to coal workers' pneumoconiosis. This is irrational decision-making and contrary to law.

Under the 15-year presumption, the questions of pneumoconiosis and pneumoconiosis causation are consolidated into a single inquiry to determine if the evidence rebuts the presumed finding of coal workers' pneumoconiosis.  The ALJ took the opposite approach, separately requiring Consol to rebut the inapplicable 10-year presumption and then using a failure to so rebut to foreclose rebuttal of the applicable 15-year presumption.  The ALJ prejudicially distorts the law, imposing an unwarranted double presumption on operators and preventing all relevant

evidence from being considered in violation of 30 U.S.C. § 923(b). The Court

should vacate and remand for further proceedings consistent with the law.

**3.    The ALJ's finding of disability due to pneumoconiosis remains unexplained.**

The ALJ concluded the evidence established Mr. Gilbert's disability was due

to pneumoconiosis. He did so only by giving less weight to the opinions of

Drs. Fino, Altmeyer, and Rosenberg because those doctors supposedly based their

conclusions on their belief that Mr. Gilbert does not have clinical coal workers'

pneumoconiosis.

The ALJ's conclusion is erroneous. For the reasons explained above, the

ALJ's finding of pneumoconiosis is not supported by substantial evidence, as he

failed to meaningfully consider all relevant evidence regarding the existence of

coal workers' pneumoconiosis. *See supra*. In addition, the ALJ failed to explain

why Drs. Fino, Altmeyer, and Rosenberg's finding of no clinical coal workers'

pneumoconiosis is relevant to their disability conclusions. These physicians

explained in great detail, with reference to and support from the medical records

and clinical findings, why they attributed Mr. Gilbert's impairment to conditions

other than coal dust exposure. They incorporated the whole of the clinical

information and testing as is contemplated by 20 C.F.R. § 718.202(a)(4). The

physicians' failure to diagnose clinical coal workers' pneumoconiosis is not

sufficient for the ALJ to strike further consideration of the relevant evidence if

their opinions explain why impairment is due to something other than coal workers' pneumoconiosis. *See Mingo Logan Coal Co. v. Owens*, __ F.3d __, 2013 WL 3929081, at *10 (4th Cir. 2013) (Niemeyer, J., concurring) (mild pneumoconiosis that does not materially contribute to total disability rebuts the 15-year presumption). In this case, the physicians explained that Mr. Gilbert's normal diffusing capacity indicates his hypoxemia and resulting impairment is due not to intrinsic lung disease but to extrinsic conditions like obesity.

Because the ALJ failed to adequately address the physicians' reasoning for attributing Mr. Gilbert's impairment to conditions other than coal workers' pneumoconiosis, the ALJ's decision is irrational, unsupported by substantial evidence, and contrary to law. The Court should therefore vacate and remand for further proceedings consistent with the law.

### 4. The ALJ inadequately weighed the evidence from this subsequent claim.

The ALJ reviewed the evidence submitted for the subsequent claim and said he gave more weight to the more recent x-rays, as courts have long acknowledged that pneumoconiosis is a progressive and irreversible disease. JA 72. In doing so, the ALJ improperly accorded what amounts to an irrebuttable presumption of progressivity and irreversibility to x-ray evidence of pneumoconiosis.

Such a shortcut for analysis of all relevant evidence is unwarranted as the majority of the x-rays in the previous claim were negative for pneumoconiosis.

35

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████ *See* JA

542-43. ██████████████████████████████████████

████████████████████████████████████████

████████████      JA 542–43.  Considering all relevant evidence, a fact-finder must

consider this factor and explain how both the findings and evidence from the

original claim affect a finding in the subsequent claim on whether the 15-year

presumption of total disability due to coal workers' pneumoconiosis is rebutted.

## VII.      CONCLUSION

Consolidation Coal Co. respectfully requests the Board's decision and order affirming the ALJ's award of benefits be vacated and remanded for reconsideration in accordance with the BLBA and black lung regulations.

Respectfully submitted,

**CONSOLIDATION COAL CO.,**

By Counsel.

/s/ Jeffrey R. Soukup
William S. Mattingly
WV Bar No. 4699
Jeffrey R. Soukup
WV Bar No. 11872
Jackson Kelly PLLC
P. O. Box 619
Morgantown, WV  26507
(304) 284-4100

## VIII.    REQUEST FOR ORAL ARGUMENT

Consolidation Coal Co. respectfully requests this matter be set for oral argument before a panel of the United States Court of Appeals for the Fourth Circuit.  Oral argument will assist this Court in understanding the full extent of the issues and contentions of the parties.

## IX.    ADDENDUM OF STATUTES, RULES, and REGULATIONS

### 20 C.F.R. § 718.102

**Definition of pneumoconiosis.**

(a) A chest roentgenogram (X-ray) shall be of suitable quality for proper classification of pneumoconiosis and shall conform to the standards for administration and interpretation of chest X-rays as described in Appendix A.

(b) A chest X-ray to establish the existence of pneumoconiosis shall be classified as Category 1, 2, 3, A, B, or C, according to the International Labour Organization Union Internationale Contra Cancer/Cincinnati (1971) International Classification of Radiographs of the Pneumoconioses (ILO–U/C 1971), or subsequent revisions thereof. This document is available from the Division of Coal Mine Workers' Compensation in the U.S. Department of Labor, Washington, D.C., telephone (202) 693–0046, and from the National Institute for Occupational Safety and Health (NIOSH), located in Cincinnati, Ohio, telephone (513) 841–4428) and Morgantown, West Virginia, telephone (304) 285–5749. A chest X-ray classified as Category Z under the ILO Classification (1958) or Short Form (1968) shall be reclassified as Category 0 or Category 1 as appropriate, and only the latter accepted as evidence of pneumoconiosis. A chest X-ray classified under any of the foregoing classifications as Category 0, including sub-categories 0--, 0/0, or 0/1 under the UICC/Cincinnati (1968) Classification or the ILO–U/C 1971 Classification does not constitute evidence of pneumoconiosis.

(c) A description and interpretation of the findings in terms of the classifications described in paragraph (b) of this section shall be submitted by the examining physician along with the film. The report shall specify the name and qualifications of the person who took the film and the name and qualifications of the physician interpreting the film. If the physician interpreting the film is a Board-certified or Board-eligible radiologist or a certified "B" reader (see § 718.202), he or she shall so indicate. The report shall further specify that the film was interpreted in compliance with this paragraph.

(d) The original film on which the X-ray report is based shall be supplied to the Office, unless prohibited by law, in which event the report shall be considered as evidence only if the original film is otherwise available to the Office and other parties. Where the chest X-ray of a deceased miner has been lost, destroyed or is otherwise unavailable, a report of a chest X-ray submitted by any party shall be considered in connection with the claim.

(e) Except as provided in this paragraph, no chest X-ray shall constitute evidence of the presence or absence of pneumoconiosis unless it is conducted and reported in accordance with the requirements of this section and Appendix A. In the absence of evidence to the contrary, compliance with the requirements of Appendix A shall be presumed. In the case of a deceased miner where the only available X-ray does not substantially comply with paragraphs (a) through (d), such X-ray may form the basis for a finding of the presence or absence of pneumoconiosis if it is of sufficient quality for determining the presence or absence of pneumoconiosis and such X-ray was interpreted by a Board-certified or Board-eligible radiologist or a certified "B" reader (see § 718.202).

## 20 C.F.R. § 718.201

### Definition of pneumoconiosis.

(a) For the purpose of the Act, "pneumoconiosis" means a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment. This definition includes both medical, or "clinical", pneumoconiosis and statutory, or "legal", pneumoconiosis.

> (1) Clinical Pneumoconiosis. "Clinical pneumoconiosis" consists of those diseases recognized by the medical community as pneumoconioses, i.e., the conditions characterized by permanent deposition of substantial amounts of particulate matter in the lungs and the fibrotic reaction of the lung tissue to that deposition caused by dust exposure in coal mine employment. This definition includes, but is not limited to, coal workers' pneumoconiosis, anthracosilicosis, anthracosis, anthrosilicosis, massive pulmonary fibrosis, silicosis or silicotuberculosis, arising out of coal mine employment.

40

(2) Legal Pneumoconiosis. "Legal pneumoconiosis" includes any chronic lung disease or impairment and its sequelae arising out of coal mine employment. This definition includes, but is not limited to, any chronic restrictive or obstructive pulmonary disease arising out of coal mine employment.

(b) For purposes of this section, a disease "arising out of coal mine employment" includes any chronic pulmonary disease or respiratory or pulmonary impairment significantly related to, or substantially aggravated by, dust exposure in coal mine employment.

(c) For purposes of this definition, "pneumoconiosis" is recognized as a latent and progressive disease which may first become detectable only after the cessation of coal mine dust exposure.

## 20 C.F.R. § 718.203

### Establishing relationship of pneumoconiosis to coal mine employment.

(a) In order for a claimant to be found eligible for benefits under the Act, it must be determined that the miner's pneumoconiosis arose at least in part out of coal mine employment. The provisions in this section set forth the criteria to be applied in making such a determination.

(b) If a miner who is suffering or suffered from pneumoconiosis was employed for ten years or more in one or more coal mines, there shall be a rebuttable presumption that the pneumoconiosis arose out of such employment.

(c) If a miner who is suffering or suffered from pneumoconiosis was employed less than ten years in the nation's coal mines, it shall be determined that such pneumoconiosis arose out of that employment only if competent evidence establishes such a relationship.

**30 U.S.C. § 921(c)(4)**

**Regulations and presumptions**

(c) Presumptions

For purposes of this section—

(1) If a miner who is suffering or suffered from pneumoconiosis was employed for ten years or more in one or more coal mines there shall be a rebuttable presumption that his pneumoconiosis arose out of such employment.

(2) If a deceased miner was employed for ten years or more in one or more coal mines and died from a respirable disease there shall be a rebuttable presumption that his death was due to pneumoconiosis. The provisions of this paragraph shall not apply with respect to claims filed on or after the effective date of the Black Lung Benefits Amendments of 1981.

(3) If a miner is suffering or suffered from a chronic dust disease of the lung which (A) when diagnosed by chest roentgenogram, yields one or more large opacities (greater than one centimeter in diameter) and would be classified in category A, B, or C in the International Classification of Radiographs of the Pneumoconioses by the International Labor Organization, (B) when diagnosed by biopsy or autopsy, yields massive lesions in the lung, or (C) when diagnosis is made by other means, would be a condition which could reasonably be expected to yield results described in clause (A) or (B) if diagnosis had been made in the manner prescribed in clause (A) or (B), then there shall be an irrebuttable presumption that he is totally disabled due to pneumoconiosis or that his death was due to pneumoconiosis, or that at the time of his death he was totally disabled by pneumoconiosis, as the case may be.

(4) if a miner was employed for fifteen years or more in one or more underground coal mines, and if there is a chest roentgenogram submitted in connection with such miner's, his widow's, his child's, his parent's, his brother's, his sister's, or his dependent's claim under this subchapter and it is interpreted as negative with respect to the requirements of paragraph (3) of this subsection, and if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then there shall be a

rebuttable presumption that such miner is totally disabled due to pneumoconiosis, that his death was due to pneumoconiosis, or that at the time of his death he was totally disabled by pneumoconiosis. In the case of a living miner, a wife's affidavit may not be used by itself to establish the presumption. The Secretary shall not apply all or a portion of the requirement of this paragraph that the miner work in an underground mine where he determines that conditions of a miner's employment in a coal mine other than an underground mine were substantially similar to conditions in an underground mine. The Secretary may rebut such presumption only by establishing that (A) such miner does not, or did not, have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine.

(5) In the case of a miner who dies on or before March 1, 1978, who was employed for 25 years or more in one or more coal mines before June 30, 1971, the eligible survivors of such miner shall be entitled to the payment of benefits, at the rate applicable under section 922(a)(2) of this title, unless it is established that at the time of his or her death such miner was not partially or totally disabled due to pneumoconiosis. Eligible survivors shall, upon request by the Secretary, furnish such evidence as is available with respect to the health of the miner at the time of his or her death. The provisions of this paragraph shall not apply with respect to claims filed on or after the day that is 180 days after the effective date of the Black Lung Benefits Amendments of 1981.

**30 U.S.C. § 923**

**Filing of notice of claim.**

(a) Promulgation of regulations; time requirement

Except as otherwise provided in section 924 of this title, no payment of benefits shall be made under this part except pursuant to a claim filed therefor on or before December 31, 1973, in such manner, in such form, and containing such information, as the Secretary shall by regulation prescribe.

(b) Utilization of personnel and procedures; evidence required to establish claim; medical evidence; affidavits; autopsy reports; reimbursement of expenses

No claim for benefits under this part shall be denied solely on the basis of the results of a chest roentgenogram. In determining the validity of claims under this part, all relevant evidence shall be considered, including, where relevant, medical tests such as blood gas studies, X-ray examination, electrocardiogram, pulmonary function studies, or physical performance tests, and any medical history, evidence submitted by the claimant's physician, or his wife's affidavits, and in the case of a deceased miner, other appropriate affidavits of persons with knowledge of the miner's physical condition, and other supportive materials. Where there is no medical or other relevant evidence in the case of a deceased miner, such affidavits, from persons not eligible for benefits in such case with respect to claims filed on or after the effective date of the Black Lung Benefits Amendments of 1981, shall be considered to be sufficient to establish that the miner was totally disabled due to pneumoconiosis or that his or her death was due to pneumoconiosis. In any case, other than that involving a claim filed on or after the effective date of the Black Lung Benefits Amendments of 1981, in which there is other evidence that a miner has a pulmonary or respiratory impairment, the Secretary shall accept a board certified or board eligible radiologist's interpretation of a chest roentgenogram which is of a quality sufficient to demonstrate the presence of pneumoconiosis submitted in support of a claim for benefits under this subchapter if such roentgenogram has been taken by a radiologist or qualified technician, except where the Secretary has reason to believe that the claim has been fraudulently represented. In order to insure that any such roentgenogram is of adequate quality to demonstrate the presence of pneumoconiosis, and in order to provide for uniform quality in the roentgenograms, the Secretary of Labor may, by regulation, establish specific requirements for the techniques used to take roentgenograms of the chest. Unless the Secretary has good cause to believe that an autopsy report is not accurate, or that the condition of the miner is being fraudulently misrepresented, the Secretary shall accept such autopsy report concerning the presence of pneumoconiosis and the stage of advancement of pneumoconiosis. Claimants under this part shall be reimbursed for reasonable medical expenses incurred by them in establishing their claims. For purposes of determining total disability under this part, the provisions of subsections (a), (b), (c), (d), and (g) of section 221 of such Act [42 U.S.C.A. § 421(a) to (d), (g)] shall be applicable. The provisions of

44

sections 204, 205(a), (b), (d), (e), (g), (h), (j), (k), (l), and (n), 206, 207, and 208 of the Social Security Act [42 U.S.C.A. §§ 404, 405(a), (b), (d), (e), (g), (h), (j), (k), (l), and (n), 406, 407, 408] shall be applicable under this part with respect to a miner, widow, child, parent, brother, sister, or dependent, as if benefits under this part were benefits under Title II of such Act [42 U.S.C.A. § 401 et seq.]. Each miner who files a claim for benefits under this subchapter shall upon request be provided an opportunity to substantiate his or her claim by means of a complete pulmonary evaluation.

(c) Filing of claim for workmen's compensation; necessity; exceptions

No claim for benefits under this section shall be considered unless the claimant has also filed a claim under the applicable State workmen's compensation law prior to or at the same time his claim was filed for benefits under this section; except that the foregoing provisions of this paragraph shall not apply in any case in which the filing of a claim under such law would clearly be futile because the period within which such a claim may be filed thereunder has expired or because pneumoconiosis is not compensable under such law, or in any other situation in which, in the opinion of the Secretary, the filing of a claim would clearly be futile.

(d) Employment termination and benefits entitlement

No miner who is engaged in coal mine employment shall (except as provided in section 921(c)(3) of this title) be entitled to any benefits under this part while so employed. Any miner who has been determined to be eligible for benefits pursuant to a claim filed while such miner was engaged in coal mine employment shall be entitled to such benefits if his or her employment terminates within one year after the date such determination becomes final.

45

# X.    CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

Certificate of Compliance with Type-Volume Limitations,
Typeface Requirements, and Type-Style Requirements

No.13-1939        Caption:  <u>Consolidation Coal Co. v. Donald Gilbert</u>

1.    This brief complies with the type-volume limitation of Fed.R.App.P. 32(a)(7)(B) because:

      this brief contains **<u>7,703</u>** words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type style requirements of Fed.R.App.P. 32(a)(6) because:

      this brief has been prepared in a proportionally spaced typeface using Microsoft Word  2010 Version in Times New Roman 14 point font.

<u>/s/ Jeffrey R. Soukup</u>
*Counsel for Consolidation Coal Co.*

Dated: September 18, 2013

46

## XI.    CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that the **Opening Brief of Petitioner (Public Redacted Version), Consolidation Coal Co.,** was served upon the following by electronic delivery and UPS Ground this **18th** day of September, 2013.

***Electronic/UPS Ground***:    Patricia S. Connor, Clerk of Court
U. S. Court of Appeals for the Fourth Circuit
Lewis F. Powell, Jr. United States Courthouse Annex
1100 East Main Street, Suite 501
Richmond, VA  23219-3517

Robert J. Bilonick, Esquire
Pawlowski, Bilonick & Long
603 North Julian Street
P. O. Box 658
Ebensburg, PA  15931-0658

Barry H. Joyner, Esquire
U. S. Department of Labor
Office of the Solicitor
Frances Perkins Building, Suite N-2117
200 Constitution Avenue, N.W.
Washington, DC  20210


/s/ Jeffrey R. Soukup
*Counsel for Consolidation Coal Co.*


cc:    Candy Price, HeathSmart Casualty Claims Solutions
M0902308.DOCX/JRS:srs